IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL JOHNSON,

    *Plaintiff*,

    v.

                       Civil Action No. ELH-17-1546

UNITED PARCEL SERVICE, INC.

    *Defendant*.

**MEMORANDUM OPINION**

In this employment discrimination case brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), codified, as amended, at 42 U.S.C. §§ 2000e *et seq.*, the self-represented plaintiff, Michael Johnson, has sued his employer, United Parcel Service, Inc. ("UPS"), alleging retaliation as well as discrimination based on religion. *See* ECF 1 ("unsigned Complaint"); ECF 3 ("signed Complaint");[1] ECF 8 (Amended Complaint). Johnson appended several exhibits to the Amended Complaint.[2] He seeks compensatory damages of $500,000 as well as punitive damages. ECF 1 at 7; ECF 3 at 7.

UPS has moved to dismiss the Amended Complaint (ECF 13), supported by a

---

[1] Johnson filed an unsigned Complaint on June 8, 2017 (ECF 1), along with an appended statement of facts (*id.* at 9-14), a Charge of Discrimination, dated April 17, 2016 (ECF 1-2 at 2), and a Dismissal and Notice of Rights, dated March 10, 2017 (ECF 1-2 at 1). Local Rule 102.1.a.ii states that "the Clerk will accept for filing only documents signed by" the pro se litigant. By Order of July 7, 2017 (ECF 2), I granted Johnson additional time to submit a signed Complaint. Johnson submitted the signed Complaint (ECF 3) on July 13, 2017, along with the previously appended statement of facts. *Id.* at 9-14.

[2] The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Accordingly, I shall construe ECF 1, ECF 3, and ECF 8 collectively as Johnson's Amended Complaint.

memorandum of law (ECF 13-1) (collectively, the "Motion") and exhibits. *See* ECF 13-2 through ECF 13-4. Pursuant to Fed. R. Civ. P. 12(b)(1), UPS argues that Johnson failed to meet the administrative exhaustion requirements of Title VII. *See* ECF 13, ¶¶ b, c, d; *see also* ECF 13-1 at 10-18. In the alternative, UPS argues, pursuant to Fed. R. Civ. P. 12(b)(6), that the Amended Complaint fails to state a claim of retaliation. *See* ECF 13, ¶¶ e, f; *see also* ECF 13-1 at 19-30.

Johnson opposes the Motion (ECF 16, "Opposition"), and UPS has replied. ECF 17 ("Reply"). No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion, without prejudice, and with leave for plaintiff to amend the suit, as set forth herein.

## I.    Factual Background[3]

### A.

Johnson is a long-time employee of UPS. He began his employment in 1989, as a part-time Loader and Unloader. ECF 3 at 6; ECF 8-1 at 2 (Charge of Discrimination, dated April 17, 2016) (the "Charge"). He now works as a UPS Package Car Driver. ECF 8-1 at 2. According to Johnson, his job requires him to operate a UPS vehicle and to deliver packages. ECF 3 at 9-14.

Plaintiff alleges that he has multiple supervisors and managers at UPS, including Thomas Reinhardt, Scott Clark, John Punte (*see* ECF 8-1 at 2), Gary Harmon, "Todd," and "Charles." *See* ECF 8-2 at 6-7 (letter from Johnson to an unidentified "Committee," dated September 14, 2015) (the "Committee Letter"); ECF 3 at 12. Plaintiff also avers that his spouse, Khalilah

---

[3] As discussed, *infra*, in the posture of this case, I must assume the truth of the facts alleged by Johnson. And, as discussed, *infra*, the Court may consider exhibits incorporated in or integral to the suit, and take judicial notice of public records.

Johnson ("Ms. Johnson"), is an employee of UPS. ECF 3 at 6.

It appears that plaintiff is a member of the Teamsters Union ("Union"), which represents UPS employees. *See* ECF 3 at 9.[4] The Amended Complaint refers to the "National Master United Parcel Service Agreement and Atlantic Area Supplemental Agreement" (ECF 3 at 9), which appears to be a collective bargaining agreement ("CBA") between UPS and the Union.

Johnson describes himself as a "Sabbath keeping Christian." *See* ECF 3 at 5. He states that on May 1, 2013, he and his wife each "filed a request for religious accommodation, in order to observe the Sabbath." ECF 3 at 6. Plaintiff does not explain the nature of the requested accommodation. But, he alleges that, as a result of the request, and because of litigation initiated by Ms. Johnson, he has been "harassed and retaliated against," which led him to file "an inquiry" with the Equal Employment Opportunity Commission ("EEOC") in November 2015. *Id.* Plaintiff claims that after he filed the inquiry, "the retaliation increased" and he "continue[d] to be harassed by [his] supervisors and management." *Id.*

According to plaintiff, on an unspecified date, Ms. Johnson sued UPS. ECF 3 at 6, 9, 14. UPS has submitted the decision of the United States Court of Appeals for the Fourth Circuit in the case of *Khalilah Johnson v. United Parcel Service, Inc.*, 681 F. App'x 177 (4th Cir. 2017) (per curiam). *See* ECF 13-4. The opinion reveals that Ms. Johnson sued UPS in state court, on June 16, 2014, and that the case was removed to federal court in Maryland on December 23, 2014. *See* RDB-14-4003.

In her suit, which was filed under Title VII and Md. Code (2014 Repl. Vol., 2017 Supp.),

---

[4] According to UPS, plaintiff is "a bargaining unit employee who is represented by the Teamsters Union." ECF 13-1 at 3-4.

§ 20-606 of the State Government Article ("S.G."), Ms. Johnson alleged, *inter alia*, retaliation and discrimination based on race, sex, and religion. *See* RDB-14-4003, ECF 3 (Ms. Johnson's Amended Complaint). By Memorandum Opinion (*id.*, ECF 53) and Order (*id.*, ECF 54), Judge Bennett granted summary judgement in favor of UPS. The Fourth Circuit affirmed, concluding that Ms. Johnson had "forfeited appellate review" by failing to challenge the "basis for the district court's disposition." *Id.*, ECF 61; *see also* ECF 13-4.

Johnson appended to his suit an EEOC Intake Questionnaire, dated January 8, 2016. *See* ECF 8-2 at 2-5 ("Intake Questionnaire"). On the Intake Questionnaire, Johnson checked the box indicating that he believed UPS had retaliated against him. *Id.* at 3. He also checked the box indicating that he "believe[d] that [he] was discriminated against by" his "Employer." *Id.* at 2. But, he did not check the box for discrimination based on religion. *Id.* at 3. Additionally, in answer to several questions, Johnson said, "explanation is attached." *Id.* Johnson included here a letter dated September 14, 2015, addressed to the "Committee." ECF 8-2 at 6-7. It is not clear whether this document is the "explanation" referenced by Johnson on the Intake Questionnaire.

In the Committee Letter, Johnson stated that UPS "retaliated against" him for filing several grievances with the Union for having to work more than 9.5 hours in a single day. ECF 8-2 at 6. Johnson claimed that he received a "warning letter" in February 2015 for failing to return to the UPS office after Todd had instructed him to do so. *Id.* And, Johnson averred that on August 25, 2015, Harmon gave him "a termination" for failing to scan "every package" he was responsible for delivering the previous day, August 24, 2015. *Id.*

Further, Johnson stated that his "job is in jeopardy for standing up for [his] contractual rights." *Id.* at 7. The "contractual rights" appear to be connected to the CBA and "the 9.5 list."

*Id.* at 6. However, Johnson does not explain the nature of "the 9.5 list," nor does he explain the relevance of the CBA. Ultimately, Johnson "ask[ed] that the company cease the intimidation and retaliatory tactics against [him] and allow [him] to work in a safe harassment free environment for 9.5 hours." *Id.* at 7.

Johnson states that he filed a Charge of Discrimination on February 17, 2016. *See* ECF 3 at 6. However, the Charge he submitted to the Court is dated April 17, 2016. *See* ECF 8-1 at 2. In the Charge, plaintiff checked the box indicating a claim of retaliation. ECF 8-1 at 2. He did not check the box alleging discrimination based on religion. *Id.* The form asks for the earliest and latest dates of discrimination. Plaintiff provided the date of February 17, 2015 and August 25, 2015, respectively. *Id.* Johnson did not check the box alleging a continuing action. *Id.*

In the portion of the Charge dedicated to the "Particulars" of his claim, Johnson did not mention a claim based on religion. He said, *id.*:

I. I began my employment with the above referenced employer in February 1989, as a Part-time Loader and recently held the position of Package Car Driver. I filed an inquiry with EEOC in January 2016, which I decide [sic] not to pursue but authorized EEOC to notify my employer. Mr. Scott Clark, manager and Thomas Reinhardt, Supervisor was [sic] aware. In February 17, 2016, [sic] I requested the 9.5 hours' [sic] work schedule. Mr. Reinhardt and Clark had since continuously subjected me to daily harassment, and overworked. I complained and as a result I was suspended. On August 19, 2015, I was falsely suspended for three days because the manager accused me of delivering a residential package after 5:00 PM. On August 24, 2015, Mr. Reinhardt and Clark threatened to discharge me; I was accused of not following procedures in scanning packages. Mr. John Punte, Supervisor threatened me and commented since I was not going to give in, they would not be giving in either in reference to my request to work 9.5 hours daily.

II. Respondent didn't give me any reasonable explanation for its actions.

III.   I believe I was retaliated against for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964 as amended with respect to terms and conditions of employment, harassment[,] suspension.

The EEOC issued a Dismissal and Notice of Rights on March 10, 2017. ECF 1-2 at 1. Plaintiff was advised that he had 90 days in which to file suit. *Id.* On June 8, 2017, Johnson filed suit, alleging discrimination based on religion. ECF 1; *see also* ECF 3; ECF 8. In addition, Johnson claims that UPS subjected him to unequal terms and conditions of his employment, in retaliation for Ms. Johnson's earlier lawsuit, and for an "inquiry" plaintiff filed with the EEOC in November 2015. ECF 3.[5]

**B.**

In his suit, Johnson has set forth workplace infractions, a catalogue of "grievances" that he filed against UPS, and a list of "hearings" Johnson attended between January 21, 2015 and February 15, 2017. ECF 3 at 9-14. The infractions appear to pertain to violations of the CBA by Johnson. The grievances appear to be complaints filed by Johnson with the Union. And, the hearings appear to have been about the infractions and grievances. *See id.*; *see also* ECF 13-1 at 7, 17 n.9 & n.10, 22 n.15. I shall discuss the alleged infractions, grievances, and hearings by topic, to the extent feasible.

**1.   Article 7 Infractions**

Plaintiff indicates that "Article 7" is a provision of the CBA that requires a "panel level" hearing for an employee who is "discipline[d]" with either "suspension or termination." ECF 3

---

[5] In the Motion, UPS argues that plaintiff's Complaint was untimely filed. *See* ECF 13, ¶ 3.a. Johnson filed the initial Complaint on June 8, 2017. *See* ECF 1. But, he failed to sign it. *See id.* By Order of July 7, 2017 (ECF 2), I provided Johnson an extension of time, until July 14, 2017, to submit a signed Complaint. On July 13, 2017, Johnson submitted a signed version of the same Complaint. *See* ECF 3. In my view, Johnson's suit was timely filed, despite his initial failure to sign it.

at 9. Johnson avers that the appended statement of facts summarizes "the Article 7 disciplines [he] received . . . while [his] wife was in litigation proceedings." *Id.*

Johnson claims that he was disciplined under Article 7 on February 4, 2016, for his "job performance"; on March 7, 2016, for "not following proper procedures for Commercial Releasing packages"; on April 15, 2016, for "not signing a commitment for a safety observation"; on May 10, 2016, for "not following methods"; and on October 4, 2016, for "using the phone" in the UPS office while "getting a call tag printed." *See* ECF 3 at 11-14. Plaintiff provides no further explanation of these events.

## 2. Article 7 Grievances

Johnson filed multiple grievances to contest his Article 7 infractions. *See* ECF 3 at 9-14. On February 11, 2016, he filed a grievance about the Article 7 infraction of February 4, 2016, which was connected to his "job performance." *Id.* at 11. He provides no additional facts about this grievance. On March 7, 2016, plaintiff filed a grievance pertaining to an Article 7 infraction he received that same day for not following "Commercial Releasing" procedures. *Id.* He does not provide the meaning of "Commercial Releasing" procedures.

On March 21, 2016, Johnson filed a grievance for being "placed on Article 7 for being under 85% for Commercial Releasing a package." He does not explain the significance of being "under 85%." However, he seems to assert that several of his colleagues were also "under" in relation to "Commercial Releasing," but only plaintiff was disciplined. *Id.* at 11. He refers to this grievance as one for "discrimination." *Id.* at 11.

Johnson filed a grievance on April 17, 2016, contesting the Article 7 infraction of April 15, 2016, which was connected to his failure to sign "a commitment for a safety observation."

*Id.* at 12.  Additionally, he filed a grievance on May 12, 2016, contesting an Article 7 infraction he received "for being over dispatched" on an unspecified date.  *Id.*  And, he filed a grievance on October 4, 2016, contesting an Article 7 infraction related to his use of a phone in the UPS office.  *Id.* at 13.

### 3.  Grievances for Working More than 9.5 Hours Per Day

Johnson lodged many grievances against UPS about "a contractually agreed list to work within 9.5 hours . . . ."  *Id.* at 9.  The "contractually agreed list" appears to be a provision of the CBA preventing UPS from requiring Johnson to work more than 9.5 hours per day.  *See* ECF 3 at 9, 14.  Johnson avers that the "grievances for 9.5 went unheard for all of 2015 and most of 2016."  ECF 3 at 14.

According to plaintiff, he filed "grievances for working over 9.5 hours" per day on January 21, 2015; February 5, 2015; February 11, 2015; March 12, 2016;[6] July 26, 2015; July 31, 2015; August 16, 2015; January 7, 2016; February 2, 2016; February 8, 2016; February 14, 2016; February 21, 2016; March 6, 2016; March 21, 2016; March 27, 2016; April 17, 2016; April 29, 2016; May 9, 2016; May 22, 2016; May 31, 2016; June 8, 2016; June 23, 2016; July 1, 2016; August 1, 2016; August 21, 2016; September 15, 2016; January 3, 2017; and February 15, 2017. *See* ECF 3 at 9-14.

### 4.  Grievances Pertaining to Johnson's Religion

On November 25, 2015, Johnson filed a Union grievance against UPS for "not paying" his "approved vacation days" as required by a "Religious Accommodation Agreement"

---

[6] As noted, plaintiff states that he filed a grievance on March 12, 2016.  ECF 3 at 9. However, given the chronological organization of the statement of facts, plaintiff may have meant March 12, 2015, not March 12, 2016.

("Agreement"). ECF 3 at 10. Plaintiff does not specify the date of the Agreement. However, the Agreement appears to establish "designated Friday's," for which Johnson would "be paid a vacation day." *Id.* Plaintiff asserts that UPS did not permit him to take paid leave on Friday, October 23, 2015, as required by the Agreement. *See id.*

Plaintiff filed a Union grievance on April 17, 2016, for "[t]oo much work placed on my truck on Friday, April 15, 2016." *Id.* at 12. Johnson avers that he sent several "messages to the center for help" because he "need[ed] help to honor [his] Sabbath Day." Plaintiff does not identify whether the "center" is within UPS, the Union, or another entity.

### 5. Additional Grievances

Johnson filed additional grievances about various other matters. On February 18, 2015, he filed a grievance for being "discharged with no Union Representation." ECF 3 at 9. However, plaintiff provides no explanation as to the alleged discharge, which is particularly confusing given that he appears to remain employed by UPS. On May 26, 2015, and May 30, 2015, Johnson filed grievances relating to a "warning letter" he received "for taking two days off for funeral[.]" *Id.* at 9. Plaintiff avers that the time off had been approved by Reinhardt. *Id.*

Johnson filed another grievance on August 21, 2015, in response to a three-day suspension he received for "pressing the wrong button on the Diad Board." *Id.* at 10. He does not clarify the purpose of a Diad Board, or the significance of pressing the wrong button.

On October 29, 2015, Johnson filed a grievance concerning a vacation request. ECF 3 at 10. He filed a grievance on November 29, 2015, for being disciplined for incorrectly "scanning two packages." ECF 3 at 10. He filed another grievance on December 10, 2015, for "being over dispatched[.]" *Id.* On January 17, 2016, Johnson filed a grievance, when an unnamed supervisor

"accused [him] of putting two packages on the slide without delivering them[.]" *Id.* at 11. He

filed a grievance on March 3, 2016, for being "over supervised and over worked." *Id.* On March

6, 2016, he filed a grievance about "requesting training on Commercial Releasing a package."

*Id.* at 11. Then, on April 6 and April 14, 2016, he filed grievances "for being pulled off the road

for no reason" from "April 4 thru April 12, 2016." *Id.* at 12. And, on June 23, 2016, he filed a

grievance for not receiving vacation pay while serving a suspension from work. *Id.* at 13.

### 6. Hearings

Johnson indicates that he attended several types of hearings, including "local" hearings,

"panel" hearings, and "A.A.P.G.C." hearings. He does not explain the differences, if any,

between a "local" hearing, a "panel" hearing, and an "A.A.P.G.C." hearing.

Plaintiff attended "panel" hearings on June 14, 2016, and June 15, 2016. ECF 3 at 10.

He states that, as a result of the panel hearing of June 15, 2016, a pending "discharge was

reduced to a one day suspension." *Id.* at 13. Plaintiff does not provide the issue reviewed at the

panel hearing on June 14, 2016, or the outcome.

Johnson attended a "local" hearing on April 5, 2016, which appears to have been about

some of his "grievances." *Id.* at 12. Plaintiff does not describe which "grievances" were

addressed at that hearing, nor does he describe the outcome.

Plaintiff also participated in hearings before the "A.A.P.G.C." *Id.* at 10-13. He does not

clarify the abbreviation. Nor does he indicate the types of matters heard by the A.A.P.G.C.

According to plaintiff, he attended A.A.P.G.C. hearings on October 20, 2015, and April 19,

2016. *See id.* Although Johnson does not identify the issue at these hearings, he indicates that

the A.A.P.G.C. hearing of October 20, 2015, resulted in a "two day and four day suspension"

from work, which he served in October 2015. *Id.* at 10. The A.A.P.G.C. hearing of April 19, 2016, resulted in a one-day suspension, which plaintiff served in May 2016. *See id.* at 12-13.

## II.     Standards of Review

### A.     Rule 12(b)(1)

Failure to exhaust administrative remedies may give rise to a challenge to a federal court's subject matter jurisdiction. *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 786 (D. Md. 2013). Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary

judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

UPS brings a factual challenge because it argues that Johnson failed to exhaust his administrative remedies with regard to his Title VII claims. *See* ECF 13, ¶¶ b, c, d; *see also* ECF 13-1 at 10-18. Notably, the court may take judicial notice of the existence and contents of EEOC proceedings "if necessary to decide issues like exhaustion of administrative remedies[.]" *Clarke*, 962 F. Supp. 2d at 787. But, "it may not take judicial notice of the *truth* of matters outside the challenged pleading." *Id.* (emphasis in *Clarke*).

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v.*

*Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'*" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557

(4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007).  However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'"  *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir.2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004).

Accordingly, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ."  *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."  *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 822 F.3d at 167.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the

contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

As indicated, Johnson has submitted exhibits with his suit. *See* ECF 1-2 at 1 (Dismissal and Notice of Rights, dated March 10, 2017); ECF 8-1 at 2 (the Charge, dated April 17, 2016);[7] ECF 3 at 9-14 (appended statement of facts); ECF 8-2 at 2-5 (Intake Questionnaire, dated January 8, 2016); ECF 8-2 at 6-7 (Committee Letter, dated September 14, 2015). Because these exhibits were submitted with the suit, I may consider them in this Memorandum Opinion, without converting the Motion to one for summary judgment. *See Goines*, 822 F.3d at 166; *U.S. ex rel. Oberg*, 745 F.3d at 136; *Anand*, 754 F.3d at 198; *Am. Chiropractic Ass'n*, 367 F.3d at 234; *Phillips*, 190 F.3d at 618.

Johnson did not submit exhibits related to Ms. Johnson's litigation. But, the Amended Complaint includes allegations as to that litigation as a basis for plaintiff's Title VII retaliation claim. *See* ECF 3 at 6, ¶ E. UPS submitted the unpublished Opinion of the Fourth Circuit in

_____

[7] UPS also submitted plaintiff's Charge (ECF 13-2) and plaintiff's Dismissal and Notice of Rights (ECF 13-3).

*Khalilah Johnson v. United Parcel Service, Inc.*, 681 F. App'x 177 (4th Cir. 2017) (per curiam).

*See* ECF 13-4. Documents filed in that litigation "give rise to the legal rights asserted" by Johnson in the Amended Complaint. *See Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611. Therefore, ECF 13-4 is integral to Johnson's suit, and may be considered by the Court without converting the Motion to one for summary judgment. *See Goines*, 822 F.3d at 166; *Woods*, 855 F.3d at 642; *Kensington Volunteer Fire Dep't*, 684 F.3d at 467.

Moreover, a court "may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011). Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." And, courts may take judicial notice of publicly available records without converting a motion to dismiss to one for summary judgment. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment.").

Court documents from Ms. Johnson's suit, including the Opinion of the Fourth Circuit, submitted as ECF 13-4, are available to the public. Accordingly, I may take judicial notice of

those records without converting the Motion to one for summary judgment. *See Zak*, 780 F.3d at 607.

### III. Discussion

### A. Exhaustion

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Young v. United Parcel Service, Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1344 (2015); *DeMasters v. Carilion Clinic, et al.*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014). It also prohibits an employer from retaliating against an employee because the employee filed a grievance or complaint regarding an employment practice that allegedly violated Title VII's antidiscrimination provisions. *See* 42 U.S.C. § 2000e-3(a); *DeMasters*, 796 F.3d at 415.

As indicated, Johnson states that he filed a Charge of Discrimination on February 17, 2016. *See* ECF 3 at 6. However, he has not provided the Court with a copy of that Charge. Instead, he submitted the Charge dated April 17, 2016. *See* ECF 8-1 at 2. For the purpose of determining whether Johnson has exhausted his Title VII claims, I shall refer to the Charge of April 17, 2016.

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC, or a comparable state agency, before filing suit in a federal court. 42 U.S.C. § 2000e–5(f)(1); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). This "exhaustion requirement ensures

that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see also Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them.").

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 593 (4th Cir. 2012).

An aggrieved person must file a Title VII complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state. And, the Maryland Commission on Civil Rights is the applicable State enforcement agency. *See, e.g.*, *Dewitt v. Clean Harbors Envtl. Servs., Inc.*, RDB-16-1705, 2017 WL 3116609, at *3 (D. Md. July 21, 2017).

The exhaustion requirement of Title VII functions as a jurisdictional bar in federal court, when a plaintiff has failed to comply with it. In *Balas*, 711 F.3d at 406, the Fourth Circuit said:

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."  An aggrieved party who fails to comply with the applicable administrative procedures has failed to exhaust his administrative remedies and is generally barred from filing suit.  *See, e.g.*, *Balas*, 711 F.3d at 407; *Miles*, 429 F.3d at 491; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).  Failure to comply generally mandates dismissal of a suit.  *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process.  To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency."  *Balas*, 711 F.3d at 408 (emphasis added); *see also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."); *Evans v. Tech.'s Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint.").  Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain."  *Balas*, 711 F.3d at 408 (citations and quotation marks omitted).  Indeed, "liberal construction only stretches so far."  *Nnadozie v. Genesis Health Care Corp.*, ___ F. App'x ___, 2018 WL 1830935, at *7 (4th Cir. April 17, 2018).  Thus, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof . . . .'"  *Balas*, 711 F.3d at 407-08 (citations omitted).

However, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same . . . ." *Sydnor*, 681 F.3d at 595. The Court explained in *Sydnor*, 681 F.3d at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *See Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *Calvert Grp., Ltd.*, 551 F.3d at 300; *Evans*, 80 F.3d at 963. On the other hand, the Fourth Circuit has said that "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different *time frames*, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506 (emphasis added); *see Nnadozie*, 2018 WL 1830935, at *7.

The Fourth Circuit's opinion in *Jones v. Calvert Grp.*, 551 F.3d 297, provides guidance. In that case, the plaintiff filed a charge with the Maryland Commission on Human Relations, checking only the box for "retaliation." *Id.* She stated: "'I believe I am being forced to work in a hostile environment and subjected to differential treatment in retaliation for filing' [a prior] charge." *Id.*; *see id.* at 301. Plaintiff subsequently brought suit, alleging retaliation as well as race and sex discrimination, in violation of Title VII. *Id.* at 299. She also alleged age discrimination, in violation of the ADEA. *Id.* The defendant moved to dismiss under Rule 12(b)(6). *Id.* After converting the motion to dismiss to a motion for summary judgment, the district judge entered judgment in favor of the defendant, on the merits. *Id.* at 299-301.

The Fourth Circuit concluded that the plaintiff had failed to exhaust administrative

remedies. *Id.* at 299. It reasoned, *id.* at 301: "The . . . charge alleged that [plaintiff] was being retaliated against because she had filed [a previous] charge; it did not allege that she was discriminated against based on her age, sex, or race. Indeed, she checked only the 'retaliation' box on her EEOC charge and left unchecked the boxes for 'age,' 'sex,' or 'race.'"

*Belyakov v. Medical Science & Computing*, 86 F. Supp. 3d 430, 440 (D. Md. 2015), is also instructive. In *Belyakov*, the plaintiff applied for a job with the National Institutes of Health through the defendant staffing firm. *Id.* at 432. When plaintiff did not get the job, he filed suit against the defendant, alleging age discrimination under the ADEA, as well as national origin discrimination and retaliation under Title VII. In granting summary judgment in favor of the staffing agency as to the national origin claim, the district judge said: "Belyakov did not check the box for national origin discrimination in his EEOC charge, nor did he claim national origin discrimination or allege any facts relating to his national origin . . . in the narrative portion of his EEOC charge." *Id.* at 440. Instead, the plaintiff "asserted only claims for, and alleged facts relating to, age discrimination in violation of the ADEA and retaliation in violation of Title VII . . . ." *Id.* Therefore, the court determined that the plaintiff failed to exhaust his national origin claim. *Id.*; *see also Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 350 (D. Md. 2012) (finding that the plaintiff failed to exhaust her administrative remedies as to discrimination on the basis of age because she "did not check the box for discrimination based on age, and there is no reference to age discrimination in the narrative portion of the document"); *Talbot v. Foodservice, Inc.*, 191 F. Supp. 2d 637, 640 (D. Md. 2002) (same, for disability discrimination).

In determining the issue of exhaustion, I will consider the documents submitted by plaintiff. *See* ECF 3 at 9-14 (appended statement of facts); ECF 8-2 at 2-5 (Intake

Questionnaire); ECF 8-2 at 6-7 (Committee Letter); ECF 8-1 at 2 (Charge).

### 1. Discrimination Based on Religion

In the Charge, Johnson did not check the box for discrimination based on religion. *See* ECF 8-1 at 2. And, in the portion of the Charge designated for the "Particulars" of his claims, Johnson made no reference to his religion. *Id.* Yet, in the Amended Complaint, Johnson alleged that UPS violated Title VII by subjecting him to unequal terms and conditions of employment "based on" his "religion: Sabbath keeping Christian." *See* ECF 3 at 5, 6.

In particular, Johnson stated that he "filed a request for religious accommodation" with UPS "in order to observe the Sabbath." *Id.* at 6. And, he referred to a "Religious Accommodation Agreement" with UPS to establish "designated Friday's" for which he would "be paid a vacation day." *Id.* at 10. On November 25, 2015, Johnson lodged a Union grievance against UPS, alleging that UPS had violated the Agreement by not permitting him to take paid leave on Friday, October 23, 2015. *Id.* Johnson filed another grievance on April 17, 2016, alleging that on Friday, April 15, 2016, he had been given "[t]oo much work" and "need[ed] help to honor [his] Sabbath Day." *Id.* at 12.

In *Nnadozie*, *supra*, 2018 WL 1830935, the Fourth Circuit determined that one of the plaintiffs failed to include any facts in the EEOC charge concerning discrimination on the basis of national origin. Therefore, the Court concluded that the Title VII claim on that basis had not been exhausted, and the trial court properly granted summary judgment to the employer. *Id.* at *7. As noted, the Court said that "liberal construction only stretches so far." *Id.*

Johnson's Charge did not include a claim of discrimination based on religion. Rather, the

allegation of religious discrimination was raised for the first time in the suit. *See* ECF 1; ECF 3. Because Johnson failed to exhaust administrative remedies as to the Title VII claim of discrimination based on religion, that claim is subject to dismissal. *See Jones*, 551 F.3d at 299-301.

### 2. Retaliation

Johnson incorporated the Charge (ECF 8-1 at 2) into the Amended Complaint. *See* ECF 8; ECF 3 at 6, ¶ E. Accordingly, the claims presented in the Charge and reasserted in the Amended Complaint have been exhausted, pursuant to Title VII. But, the Amended Complaint also includes allegations that do not appear in the Charge. Therefore, the issue here concerns the scope of the Charge.

In the Charge, Johnson checked the box for retaliation. ECF 8-1 at 2. He stated that UPS had retaliated against him "with respect to terms and conditions of employment, harassment[, and] suspension" for "engaging in a protected activity in violation of Title VII[.]" *Id.* The alleged "protected activity" described in the Charge included an "inquiry" filed by Johnson "with the EEOC in January 2016, which [Johnson] decided not to pursue." *Id.* Additionally, the Charge asserted that Johnson's "request[]" for "the 9.5 hours' work schedule," which he made on February 17, 2016, constituted a protected activity under Title VII. *See id*.

The Charge described several actions taken by UPS against Johnson. ECF 8-1 at 2. In particular, Johnson alleged that Reinhardt and Clark "continuously subjected [him] to daily harassment, and overworked" him in retaliation for his "request[]" for "the 9.5 hours' work schedule" of February 17, 2016. *Id.* On an unspecified date, Johnson was allegedly "suspended" when he "complained" about the way Reinhardt and Clark were treating him. *Id.* Further, on an

unspecified date, Punte allegedly "threatened" Johnson by saying that UPS "would not be giving in" to Johnson's "request to work 9.5 hours daily." *Id.*

Additionally, the Charge stated that on August 19, 2015, UPS retaliated against Johnson by suspending him for three days. *Id.* The Charge indicated that Johnson received this suspension because an unidentified manager "falsely . . . accused" him of "delivering a residential package after 5:00 PM." *Id.* And, the Charge stated that on August 24, 2015, Clark and Reinhardt "threatened to discharge" Johnson for "not following procedures in scanning packages." *Id.*

In the Amended Complaint (ECF 3 at 6, ¶ E), Johnson alleges that UPS retaliated against him because, on May 1, 2013, he and Ms. Johnson "filed a request for religious accommodation, in order to observe the Sabbath" (*id.*); because Ms. Johnson filed a lawsuit against UPS on June 16, 2014 (*id.*; *see also* RDB-14-4003, ECF 2); and because plaintiff filed an "inquiry" with the EEOC in "November 2015." ECF 3 at 6, ¶ E. However, Johnson did not include such allegations in the Charge. *See* ECF 8-1 at 2.[8]

Plaintiff has failed to exhaust administrative remedies as to claims of retaliation based on the request of May 1, 2013, for religious accommodation; Ms. Johnson's lawsuit; and the November 2015 EEOC inquiry. Therefore, those claims are subject to dismissal.

The Amended Complaint includes a statement of facts. ECF 3 at 9-14. The statement of facts presents a litany of CBA infractions, Union grievances, and hearings. But, those are not alleged in the Charge. *See* ECF 8-1 at 2. In particular, the Charge stated that UPS retaliated

---

[8] In the Charge, plaintiff referred to an Inquiry with the EEOC in January 2016. *See* ECF 8-1 at 2. Moreover, in the EEOC Intake Questionnaire of January 8, 2016 (ECF 8-2 at 2-5), plaintiff referred only to one Inquiry, No. 8531-2016-00252. Therefore, there is no indication of a 2015 Inquiry.

against Johnson for filing an "inquiry" with the EEOC in January 2016, and for requesting to be placed on the "9.5 hours' work schedule" on February 17, 2016. *Id.* Additionally, the Charge stated that on August 19, 2015, Johnson received a three-day suspension for "delivering a residential package after 5:00 PM"; that Clark and Reinhardt "threatened to discharge" Johnson on August 24, 2015; and that, on an unspecified date, Johnson was suspended for complaining about Reinhardt and Clark, who were allegedly overworking and harassing Johnson because of Johnson's request to work no more than 9.5 hours per day. *Id.* Further, the Charge stated that Punte "threatened" Johnson that UPS "would not be giving in" to his "request to work 9.5 hours daily." *Id.* But, the statement of facts did not mention these allegations. *See* ECF 3 at 9-14. Instead, the statement of facts included a lengthy recitation of infractions, grievances, and hearings that were not referenced in the Charge, and therefore may not be considered in the context of Johnson's Title VII lawsuit.

As indicated, plaintiff included with his suit the Intake Questionnaire of January 8, 2016, in which he asserted retaliation. ECF 8-2 at 2-5; *see* ECF 8; ECF 3 at 6, ¶ E. In the Charge (ECF 8-1), plaintiff did not refer to the Intake Questionnaire. But, he alleged that he was retaliated against, *inter alia*, for filing an "inquiry" with the EEOC in January 2016. ECF 8-1 at 2. However, the "inquiry" referred to in the Charge does not appear to be the Intake Questionnaire submitted with the suit. Indeed, in the Intake Questionnaire, Johnson stated that he had previously filed an "inquiry" with the EEOC, and he identified that inquiry as "Inquiry Number 531-2016-00252." *See* ECF 8-2 at 5, ¶ 14.[9] In other words, the prior inquiry is not the

---

[9] *Compare* U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION PRE-CHARGE INQUIRY (last visited May 4, 2018), https://www.eeoc.gov/upload/pre-charge-inquiry.pdf, *with* ECF 8-2 at 2-5 (Johnson's Intake Questionnaire).

same as the Intake Questionnaire.

It follows that any claim of retaliation based on the Intake Questionnaire or its content has not been exhausted, because it was not part of the Charge. Therefore, the Intake Questionnaire may not form a basis for Johnson's Title VII claim of retaliation.

The Committee Letter (ECF 8-2 at 6-7), which was submitted with the Intake Questionnaire (ECF 8-2 at 2-5), alleged that UPS retaliated against Johnson for filing grievances about having to work more than 9.5 hours per day. *Id.* at 6-7. The Committee Letter also stated that Todd retaliated against Johnson with a "warning letter" after Johnson failed to follow instructions. *Id.* Additionally, the Committee Letter stated that Harmon retaliated against Johnson with "a termination" when Johnson failed to scan UPS packages. *Id.* These allegations were not raised in the Charge. ECF 8-1 at 2. Accordingly, the claims of retaliation alleged in the Committee Letter are subject to dismissal.

In sum, Johnson has administratively exhausted claims of retaliation as to the January 2016 EEOC inquiry; the request of February 17, 2016, to be placed on the "9.5 hours' work schedule"; the statement made by Punte on an unspecified date that UPS "would not be giving in" to Johnson's "request to work 9.5 hours daily"; the suspension received by Johnson on an unspecified date for complaining about Reinhardt and Clark, who were allegedly overworking and harassing Johnson because of Johnson's request to work no more than 9.5 hours per day; the alleged threats of Clark and Reinhardt on August 24, 2015, to discharge Johnson; and the three-day suspension imposed on Johnson on August 19, 2015, for allegedly delivering a residential package after 5:00 p.m. *See* ECF 8-1 at 2.

**B.  Proof of Retaliation**

**1.**

As noted, Title VII prohibits an employer from retaliating against an employee for engaging in an activity that is protected by Title VII, such as opposing discriminatory practices in the workplace. *See* 42 U.S.C. § 2000e-3(a); *see also DeMasters*, 796 F.3d at 415; *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

In general, there are "two avenues" *at trial* by which a plaintiff may prove a violation of Title VII. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc) (recognized in *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015), as *abrogated on other grounds by Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1345 (2015) (construing the Pregnancy Discrimination Act); *Guessous*, 828 F.3d at 216 (discussing the three steps of the *McDonnell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff," who must prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents

direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To state a prima facie case of retaliation under Title VII, a plaintiff must show: "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto*, 786 F.3d at 281 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)); *see also Stennis v. Bowie State University*, 716 F. App'x 164, 166 (4th Cir. 2017) (per curiam); *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 211 (4th Cir. 2017); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods.,*

*Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he

allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, these approaches merely serve to inform a court's evaluation of the allegations. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016).

As the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal* and *Twombly*. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556

U.S. at 684; *accord Woods*, 855 F.3d at 647.

In *Woods*, 855 F.3d at 648, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies . . . ." The question at the motion to dismiss stage is whether plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Commissioners*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

Therefore, at a minimum, Johnson must plead facts that make it plausible that he was subjected to retaliation as a result of engaging in protected activity.

**2.**

"[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin*, 149 F.3d at 259. "To fall under the protection of the opposition clause . . . behavior need not rise to the level of formal charges of discrimination. The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (citation omitted).

Notably, "[t]o establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that the protected activity preceded the adverse action and that the

employer knew the employee engaged in a protected activity." *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010) (citing *Causey v. Balog*, 162 F.3d 795, 803-04 (4th Cir. 1998)); *see also Dowe*, 145 F.3d at 657; *cf. Conrad v. CSX Transp., Inc.*, WMN-13-3730, 2014 WL 7184747, at *4 (D. Md. Dec. 15, 2014), *aff'd*, 824 F.3d 103 (4th Cir. May 25, 2016). Ordinarily, there must also exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 501 (4th Cir. 2005).

A "'lengthy time lapse between the [defendant] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). Indeed, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke*, 962 F. Supp. 2d at 790 (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *see Price v. Thompson,* 380 F.3d 209, 213 (4th Cir. 2004) (although a period of nine to ten months between the protected conduct and the adverse action presented "a very close question," the trier of fact could find a causal connection where the defendant declined to hire the plaintiff "at the first available opportunity").

In addition, to prevail on a retaliation claim under Title VII, "the existence of some adverse employment action is required." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle*, 650 F.3d at 337 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

(1998)).  Single acts that may not be cognizable as adverse actions on their own may, over time, cumulatively amount to an unlawful employment practice if they create a hostile work environment.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Harris*, 510 U.S. at 21); *Hoyle*, 650 F.3d at 333-34.

In a retaliation claim, the standard for an adverse employment action is more lenient than for a substantive discrimination claim.  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").  In the retaliation context, a plaintiff must show that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68 (quotation marks and citations omitted).

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Burlington Northern*, 548 U.S. at 67.  Moreover, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'"  *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68).

**3.**

Johnson's alleged protected activities include an EEOC inquiry filed in January 2016.  *See* ECF 8-1 at 2; *see also* ECF 3 at 6, ¶ E; ECF 8.  Johnson acknowledges that he decided "not to pursue" the inquiry, but he asserts that Clark and Reinhardt were aware of the inquiry.  ECF 8-1 at 2.  However, Johnson has not provided the Court with a copy of the inquiry.  Nor has he alleged facts as to the contents of that inquiry.

The Fourth Circuit has said that, to "satisfy the 'protected activity' element of a *prima facie* case of retaliation," the "protected activity" in question "requires [a] specific allegation of unlawful . . . discrimination." *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863 (Table), at *5 (4th Cir. 1999) (emphasis in *McNair*, alteration added) (citation omitted); *see DeMasters*, 796 F.3d at 416 (quoting 42 U.S.C. § 2000e-3(a)) ("Title VII's Opposition Clause, by its terms, prohibits retaliation against an employee who has 'opposed any practice made an unlawful employment practice' by Title VII."); *Boyer-Liberto*, 786 F.3d at 282 (stating that "an employee is protected when she opposes 'not only . . . employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful.'") (alteration *Boyer-Liberto*) (citation omitted); *see also Cox v. U.S. Postal Serv. Fed. Fed. Credit Union*, PX-14-3702, 2016 WL 3477155, at *3 (D. Md. June 27, 2016) ("[T]here must be evidence that the oppositional act was directed toward an unlawful employment practice prohibited by Title VII."); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 318 (D. Md. 2015) ("No particular magic words are required, all that is necessary is that 'the employee at least have actually opposed employment practices made unlawful *by Title VII*,' rather than raised generalized workplace grievances.") (emphasis in *Young*) (citation omitted).

Johnson has not provided any information as to the substance of the inquiry of January 2016. Notably, there is no indication that he alleged an employment practice that is unlawful under Title VII. Accordingly, I am unable to determine whether the submission of the inquiry constituted protected activity.

Johnson also alleges that his request of February 17, 2016, asking to be placed on "the 9.5 hours' work schedule," constituted a protected activity. The 9.5 hours work schedule appears

to pertain to a provision of the CBA between UPS and the Union. Plaintiff has not alleged any facts indicating that his request for adherence to "the 9.5 hours' work schedule" was connected to a protected activity, such as a request to accommodate his religious practices. Therefore, I am unable to conclude that the request of February 17, 2016, was a protected activity under Title VII. *See McNair*, 172 F.3d at *5; *DeMasters*, 796 F.3d at 416; *Boyer-Liberto*, 786 F.3d at 282; *Cox*, 2016 WL 3477155, at *3; *Young*, 108 F. Supp. 3d at 318.

Even assuming the EEOC inquiry and the request for "the 9.5 hours' work schedule" constituted protected activities, the three-day suspension Johnson received on August 19, 2015, and the threat of discharge made by Clark and Reinhardt on August 24, 2015, *predate* the EEOC inquiry and the request for "the 9.5 hours' work schedule," both of which occurred in 2016. *See* ECF 8-1 at 2; *see also* ECF 3 at 6, ¶ E; ECF 8. Therefore, the three-day suspension and the threat of discharge could not have been in retaliation for the EEOC inquiry or Johnson's request to be placed on "the 9.5 hours' work schedule."

Plaintiff also alleges that Punte "threatened" him by stating, on an unspecified date, that UPS "would not be giving in" to Johnson's "request to work 9.5 hours daily." However, as noted, plaintiff has not alleged any facts indicating that his request to limit his work schedule to 9.5 hours per day related to a protected activity. *See McNair*, 172 F.3d at *5; *DeMasters*, 796 F.3d at 416; *Boyer-Liberto*, 786 F.3d at 282; *Cox*, 2016 WL 3477155, at *3; *Young*, 108 F. Supp. 3d at 318.

Additionally, Johnson has alleged that Reinhardt and Clark "continuously subjected [him] to daily harassment, and overworked" him, in retaliation for his "request[]"of February 17, 2016, as to "the 9.5 hours' work schedule." ECF 8-1 at 2. Johnson also claims that, on an

unspecified date, he was "suspended" when he "complained" about the retaliation by Reinhardt and Clark.  *Id.*; *see* ECF 3 at 6, ¶ E; ECF 8.  But, plaintiff does not allege facts indicating that the request to work less than 9.5 hours per day was related to a protected activity under Title VII. Accordingly, Johnson's allegations about being overworked and harassed by Clark and Reinhardt appear to relate to a grievance about the duration of Johnson's workday, rather than an activity protected by Title VII.  *See McNair*, 172 F.3d at *5; *DeMasters*, 796 F.3d at 416; *Boyer-Liberto*, 786 F.3d at 282; *Cox*, 2016 WL 3477155, at *3; *Young*, 108 F. Supp. 3d at 318.

At this stage of the litigation, the question before the Court is whether Johnson has alleged facts sufficient to state a claim for relief under Title VII.  *See Ciociola*, 2016 WL 125597, at *4.  To state a retaliation claim, Johnson must plead facts making it plausible that he was subjected to retaliation for engaging in protected activity.  *Id.*  Assuming Johnson's allegations to be true, and drawing all reasonable inferences in his favor, as I must, I am unable to conclude that he has alleged facts sufficient to state a plausible claim of retaliation under Title VII.

Accordingly, I shall grant the Motion, without prejudice.  And, I shall grant plaintiff leave to amend the suit by June 15, 2018, to clarify his claim of retaliation based on the contents of the EEOC inquiry of January 2016; the basis for his request of February 17, 2016, seeking to be placed on "the 9.5 hours' work schedule" (*see* ECF 8-1 at 2); and any retaliation that followed the EEOC inquiry of January 2016 and the request of February 17, 2016.

An Order follows.

Date: May 16, 2018

_____/s/_____
Ellen L. Hollander
United States District Judge